IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRANDON L. PORTER,

                Plaintiff,                OPINION AND ORDER

v.

                                        17-cv-726-wmc

KEVIN BOODRY, SEAN SALTER,
NATHANIEL CHRISTENSEN,
DUSTIN COOPER, PATRICK HOOPER,
DUSTIN KINGSLAND,
JOSEPH CICHANOWICZ and
TRAVIS HAAG,

                Defendants.

On October 12, 2021, *pro se* plaintiff Brandon Porter will proceed to trial in this civil lawsuit with regard to events that took place in 2012 while he was incarcerated at Columbia Correctional Institution ("Columbia"). Specifically, under 42 U.S.C. § 1983, Porter asserts violations of the Eighth Amendment against:

(1) defendants Kevin Boodry, Joseph Cichanowicz, Dustin Kingsland and Nathaniel Christensen, for their alleged use of excessive force on August 23, 2012, during a cell extraction;

(2) defendants Boodry, Christensen, Cichanowicz, Dustin Cooper, Travis Haag, Patrick Hooper, Kingsland and Sean Salter, for allegedly failing to intervene to prevent or stop the use of excessive force that day;

(3) defendant Hooper for carrying out a strip search on Porter later that day, in an allegedly harassing manner intended to humiliate him; and

(4) defendant Cichanowicz for allegedly failing to intervene to stop Hooper from conducting the harassing strip search.

In advance of the final pretrial conference ("FPTC") to be held by video on October 6, 2021, the court issues the following opinion and order addressing the parties' motions

*in limine* and related matters, as well as circulating proposed orientation remarks, voir dire, jury instructions and a special verdict.

OPINION

I.    Defendant's Motion in Limine (dkt. #46)

Defendant seeks five MIL orders: *First*, while conceding that Porter may testify about his own perception of his physical and mental health before and after the incident, defendants seek to exclude any argument, questions, testimony or evidence regarding the causation of physical injury, permanence, future care and treatment, or future pain and suffering. Porter objects, arguing that he should be able to testify about his own experience and physical state, since it was clear to him that the incident with defendants led to his injured lip, thumb, head and wrist. Since the cause of these injuries are within Porter's personal knowledge, at least with respect to their onset and any intervening events or causes, the court agrees that he may testify about the perceived source of his injuries. However, he may not opine about permanence of those injuries, future care and treatment, or future pain and suffering, nor may he express any other *medical* opinions regarding those injuries, their severity or prognosis.

Porter further objects because he is seeking to subpoena the physician that treated his injuries, Dr. Dalia Suliene. As will be discussed in greater detail below, Porter did not disclose Dr. Suliene as an expert witness in this case, but the court will consider allowing Suliene to testify as a fact witness via videoconference related to her treatment of Porter's injuries, including any opinions she may have reached *at that time*. Given the lapse in time,

2

Porter is strongly encouraged to assure that Dr. Suliene has access to her contemporaneous medical records while testifying. Therefore, this motion is GRANTED in part and DENIED in part. Except as set forth above, Porter may not admit evidence or make any argument related to the permanence of his injuries, future care and treatment or future pain and suffering. The court will review the implication of this ruling for plaintiff at the final pretrial conference.

*Second*, defendants seek to exclude reference to their personnel file work history, other legal proceedings involving defendants, or any inmate complaints against defendants, except those related to this case. Defendants' position is that this evidence has no relevance, and even if relevant, its introduction would be unfairly prejudicial, tend to confuse the jury and waste time during trial. Additionally, evidence that defendants wronged inmates in the past is inadmissible under Federal Rule of Evidence 404, unless such evidence would be admissible under Rule 404(b), to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*

The Seventh Circuit has adopted a four-part test to determine whether "other acts" evidence is admissible under Rule 404:

> First, proof of the other act must be directed towards establishing a matter in issue other than the defendant's propensity to commit like conduct. Second, the other act must be of recent vintage and sufficiently similar to be relevant to the matter in issue. Third, there must be a sufficient amount of evidence for the fact finder to conclude that the similar act was committed. And fourth, the probative value of the evidence must not be outweighed by the danger of unfair prejudice.

*Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2011). Here, defendants do not represent whether there are any judgments or affirmed inmate complaints against them in lawsuits

3

or grievances involving claims of excessive force, failure to intervene or harassing strip searches. Porter claims that he should be able to submit evidence of a pattern of bad acts and to attack defendants' credibility, but Porter has not made a proffer of any judgments or affirmed inmate complaints he would seek to admit during trial.

Given the *possibility* that Porter may be able to come forward with a proffer of evidence of this kind that satisfies the four requirements for admissibility under Rule 404(b), however, the court will RESERVE on whether Porter is completely precluded from admitting evidence of any judgments or affirmed inmate complaints in which: defendant Boodry, Cichanowicz, Kingsland and/or Christensen was/were found to have used excessive force; defendant Boodry, Christensen, Cichanowicz, Cooper, Haag, Hooper, Kingsland and/or Salter failed to intervene to prevent or stop the use of excessive force; defendant Cichanowicz failed to intervene to prevent a harassing strip search; or defendant Hooper harassed an inmate during a strip search. Thus, this motion is GRANTED IN PART and RESERVED IN PART. If such judgments or affirmed inmate complaints exist, Porter will be given one last opportunity to make a specific proffer as to how those findings are relevant to show motive, intent, preparation, plan, absence of mistake, or lack of accident under Rule 404(b).

*Third*, defendants ask the court to exclude details of any other lawsuits against the Wisconsin Department of Corrections or its current or former employees, citing Federal Rules of Evidence 403 and 404(b). Porter states that this ruling would prejudice him but does not explain how other lawsuits are actually relevant to his claims. Therefore, this motion is GRANTED.

4

*Fourth*, defendants seek to exclude evidence of the other incidents and claims dismissed in the court's screening order. Although Porter claims that he should be heard if a dismissed claim is of the same nature of this case, he does not explain how any of the claims that were dismissed in the court's screening order (*see* dkt. #11) are so related to his claims proceeding to trial that they are relevant and would not confuse the jury. Accordingly, absent some additional proffer by plaintiff at the FTPC, this motion is GRANTED.

*Fifth,* defendants seek an order permitting them to impeach Porter during cross-examination with questions about his criminal convictions under Federal Rule of Evidence 609(a)(1)(A). Porter was convicted of two crimes punishable by imprisonment for more than one year -- first degree reckless homicide and attempted robbery with threat of force -- and remains confined and is serving his sentence for those convictions. (*See* Def.'s MIL #5, dkt. #46, at 7-8.) Porter objects because evidence of his conviction would prejudice him. Although defendants are correct that Rule 609 permits them to cross-examine Porter about these two felonies, and that the Court of Appeals for the Seventh Circuit has stated that the "title, date and disposition of the offense" are generally appropriate to reveal, *United States v. Lewis*, 641 F.3d 773, 783 (7th Cir. 2011), Porter's prejudice objection is well-taken given that the gravity of his past offenses far exceed their evidence as to his propensity to lie.

Given that the jury will be well aware of Porter's incarceration, the prejudicial effect of the title of these violent convictions may substantially outweigh the permitted impeachment value provided by disclosing the nature of his convictions. Therefore, the

5

court proposes the following question: "You have been convicted of two felonies, and you are still serving the sentence imposed for those convictions, correct?" Should plaintiff answer "yes," then defendants may proceed no further. On the other hand, should plaintiff answer "no," then he would open the door to more specifics regarding each conviction. The court will hear from the parties with respect to this proposed question during the FPTC. Accordingly, the court will GRANT in part and RESERVE in part as to this motion.

**II.     Voir Dire, Jury Instructions and Special Verdict**

Attached to this order are the court's proposed voir dire, jury instructions and special verdict form. The court anticipates that the trial will not be bifurcated.

Defendant's proposed voir dire is straightforward and factored into the court's standard instructions for a case of this nature. Porter proposed numerous voir dire questions that the court has excluded (*see* dkt. #45), and to which defendants have objected. The court resolves these objections as follows:

Questions Nos. 1-11, 21-22, asking for background information. Defendants object to these questions as duplicative of the court's standard questions, and the court agrees.

Question Nos. 12-18, 23, related to employment at Columbia, the DOC, in or with law enforcement; and whether they have been a victim of a crime and the nature of that crime. Defendants do not object to the substance of the questions but ask that the court further ask whether the juror's answer would impact their ability to serve as an impartial juror in this case. The court has included certain of these questions, and it will follow up as appropriate.

Question 19, describing the nature defense counsel's positions with the Attorney General's office, is unnecessary and will be omitted.

Question 20, asking whether potential jurors have had experiences with doctors or psychiatrists that might affect their ability to be impartial. Defendants argue this question is unnecessary because the parties have not identified a medical doctor or psychiatrist as a witness. As discussed above, Porter is seeking to call Dr. Dalia Suliene as a witness, who would testify about her treatment of Porter's injuries after the use of force. For the reasons explained, the court has reserved as to whether plaintiff may call her as a witness. Regardless, it is reasonable to ask a general question of this nature to the extent similar injuries or traumatic events may have required others to seek treatment. Therefore, the court has modified the question and will otherwise sustain defendants' objection.

Question Nos. 24-34, relating to potential jurors' feelings about how prisoners are treated, the purpose of incarceration, whether they are entitled to humane and fair treatment, and what should happen if a prison official is found to have used excessive force or failed to stop another prisoner from using excessive force. Defendants object to these questions as vague, overbroad and likely to cause confusion. One of the court's standard questions is aimed at biases related to the treatment of prisoners, and in the court's view, captures the potential for bias that Porter seeks to expose with these questions. The objection, therefore, is otherwise sustained.

Question Nos. 35-38 relate to the plaintiff's race, and defendants object just on the basis that they are unnecessarily cumulative. To that extent only, the objection is sustained. The court has included a question related to the plaintiff's race, which will

hopefully be sufficient to evaluate potential bias in a case like this, especially as the court will emphasize its importance to potential jurors.

Question No. 39, asking whether potential jurors know anyone that has spent time in prison. Defendants do not object but ask to include language related to whether the answer will impact their ability to be impartial. Again, the court's standard questions include this follow up questioning, as does its standard practice, so the objection is overruled as unnecessary.

Question Nos. 40-41, 43-44, relating to how potential jurors would credit testimony of prisoners versus correctional officers. Defendants object to these questions as unnecessary and likely to cause confusion. The objection is overruled, and the court has included a question intended to sus out bias against prisoners or in favor of law enforcement/correctional officers.

Question No. 42, inquiring into bias against someone with many tattoos. Defendants do not object to the substance but ask that it be phrased in a non-leading manner. The objection is sustained, and the court has included the following question: "Does the fact that a person has tattoos affect your opinion of that person? If so, do you believe your opinions will affect your ability to serve as an impartial juror in a case where a party or witness has tattoos?"

Question No. 45, related to hiring a person with a criminal record. Defendants object as overbroad and vague. Again, the objection is sustained; the court's questions related to feelings about prisoners are hopefully sufficient to elicit responses indicating the type of bias plaintiff is seeking to expose with this question.

**III.    Exhibits**

Defendant disclosed six exhibits, to which Porter does not object. Defendants ask that Exhibit 503-506 be sealed from the public record, citing security concerns related to the layout of the institution, which comprise Exhibit 503, and the confidentiality of the policy excerpts in Exhibits 504, 505, and 506. (Dkt. #51.) The court will grant the motion, emphasizing that these exhibits may become part of the public record once used at trial unless further steps are taken, either in this court or on appeal, although they will not be entered into the court's electronic docketing system. Further, defense counsel is directed to work with Green Bay's litigation coordinator DeGroot to ensure that before trial, Porter has the opportunity for two 30-minute periods of time in which to review the sealed exhibits and take notes, as well as provide him with working copies on the morning of trial that they may retrieve at the close of the day and at the close of trial.

Plaintiff disclosed 74 exhibits (*see* attachments to dkt. #45), and defendants object to many of those exhibits. As an initial matter, as to Exhibits 3-9 and 11-12, defendants do not object, but ask that plaintiff provide an unmarked copy at trial. Since defendants have easier access to some of these documents, the court asks that the parties work out the details of arranging for clean copies of these exhibits for trial.

As for defendants' substantive objections, they mainly go to relevance (Federal Rule of Evidence 401), undue prejudicial (Rule 403), or hearsay. The court will take up the specific objections during the FPTC, but notes that the bulk of Porter's proposed exhibits (Exhibits 24-56) are likely inadmissible. In particular, those exhibits all appear to relate to two, different conduct report proceedings that occurred after the events of August 23,

2012. Among those exhibits are the reports themselves, witness questions that Porter prepared for the conduct report hearing for multiple witnesses, answers to those questions, transcripts of the hearings, and related documents. In general, defendants object to these exhibits as inadmissible hearsay, on relevance grounds and because the exhibits may be unduly prejudicial or cause confusion. It appears that statements made by defendants related to the conduct report proceedings (possibly contained in Exhibits 27, 28, 30(A), 30(B), 36, 43, 44) may be admissible statements by a party opponent, *see* Fed. R. Evid. 801(d)(2)(A). In addition, one witness's answers (Ex. 39), *may* be usable by either side for impeachment purposes only. The remainder of any conduct proceedings material, however, appear inadmissible.

For example, Porter also includes several exhibits that appear to be lists of questions he asked defendants and his witnesses who testified on his behalf during one of the hearings (Exs. 26, 29, 38, 40-42); and his written submissions related to the conduct reports (Exs. 25, 31, 32, 37, 45, 46, 50). These exhibits not only constitute inadmissible hearsay, but have no relevance and are likely unduly prejudicial. Of course, Porter will be able to testify about his own experiences relevant to the events at issue, as will three of the witnesses that testified during his conduct report proceedings. Porter also lists the conduct report hearing transcripts (Exs. 34, 47, 48), seemingly miscellaneous communications and forms related to the conduct reports proceedings (Exs. 33, 35, 49), and several exhibits related to the inmate complaint he filed complaining about the events in this lawsuit (Exs. 51-56). Defendants' hearsay objection to these exhibits appears proper as well, with the possible

exception of the use of a witness's statements for impeachment purposes. Regardless, these exhibits appear to have little relevance and would likely cause jury confusion.

Porter should come prepared to explain the admissibility of these exhibits in particular, or better yet, having reduced the number of exhibits he actually intends to offer into evidence at trial. In considering which exhibits to exclude, Porter should focus on evidence that he believes will help him prove the conduct of each defendant with respect to the events that occurred on August 23, 2012, rather than evidence of unrelated to events that occurred later, including anything about proceedings related to subsequent conduct reports.

### IV. Witnesses

#### A. Defendants' witnesses (dkt. #49)

Defendants disclosed the following witnesses: defendants Sean Salter, Dustin Kingsland, Joseph Cichanowicz, Travis Haag, Kevin Boodry, Nathaniel Christensen, Dustin Cooper, and Patrick Hooper; Joseph Reda, Registered Nurse and former Nurse Clinician 2 at Columbia; and Rae Boyer, Columbia's litigation coordinator and institution complaint examiner. Plaintiff does not object to these witnesses, and the court sees no obvious problems with them.

#### B. Plaintiff's witnesses (dkt. ##44, 55, 56, 58, 59, 60)

The court has taken Porter's September 17, 2021, submissions to be the list of

witnesses he seeks to call at trial.[1]  In particular, Porter submitted multiple motions seeking the appearance of the following witnesses at trial:  Sandra Ashton-Darlinga (dkt. #55), Dr. Dalia Suliene (dkt. #56), prisoner Christopher Goodvine (dkt. #58), prisoner James Holloway (dkt. #59), and prisoner Quenton Thompson (dkt. #60).

Starting with Porter's motions asking that the court issue subpoenas for Ashton-Darlinga's and Dr. Suliene's appearances at trial, it appears that these witnesses have relevant information.  Porter represents that Ashton-Darlinga allegedly witnessed the use of force and agreed to testify on behalf of Porter (*see* dkt. #44), and Dr. Suliene treated him for his injuries after the August 23, 2012, use of force.  However, plaintiff has completely failed to follow the court's procedures for requesting a subpoena for a unincarcerated witness, set forth clearly in the Trial Preparation Order, requiring him to attest that:  (1) the witness refuses to testify voluntarily; (2) he has made arrangements for service of the subpoena or cannot pay for service and needs the assistance of the U.S. Marshal to effect services; and (3) he is prepared to tender to the person serving the subpoena a check or money order made payable to the witness in the amount necessary to cover the daily witness fee and, if applicable, mileage and costs for an overnight stay.  (*See* dkt. #39, at 20.)  The *only* piece of information Porter provided is that Ashton-Darling

---

[1] Porter failed to disclose the witnesses he actually intends to call by the September 3, 2021, disclosure deadline, and although Porter listed numerous individuals as "potential" witnesses in his proposed voir dire (*see* dkt. #45, at 1-2), it is unclear whether Porter listed these individuals because he anticipated defendants would call them or their names might just come up.  Then, on September 2, 2021, Porter submitted a declaration indicating that he was attempting to locate certain incarcerated witnesses but had not heard back from them.  (Dkt. #44.)  Since Porter's September 17th filing is more complete, the court has taken the September 2nd filing to be a motion seeking additional time to comply with the pretrial deadlines and will grant it.

previously stated that she was willing to testify on his behalf. However, this representation suggests that Ashton-Darling might appear *voluntarily*, meaning that Porter should have made arrangements for her appearance at trial with Ashton-Darlinga directly, also as instructed Trial Preparation Order (*id.*).

Although the court is inclined to deny both motions for these reasons, it is willing to leave open the possibility of these two witnesses testifying via videoconference. The court asks that before the FPTC, defense counsel work with DOC officials to determine whether Ashton-Darlinga and/or Dr. Suliene are available for trial and willing to testify voluntarily, if by videoconference. If they will testify voluntarily, the court will make every effort to accommodate their schedules. If they are unwilling to testify without a subpoena, the court *may* be inclined to issue a subpoena for their testimony, provided that Porter promptly sends to the court two checks, made out to each witness in an amount to be determined, so that the court can arrange for timely service of the subpoenas. Accordingly, these motions are RESERVED.

With respect to the incarcerated witnesses, attached to his motions seeking writs of habeas corpus testificandum, Porter submits letters from Holloway, Goodvine and Thompson, who each state their willingness to testify on Porter's behalf. Defendants do not object to Porter calling incarcerated witnesses, but ask that Porter be limited to calling just one witness, because their testimony would be duplicative. Certainly, there may be some overlap between these three witnesses' testimony, and the court does not intend to permit Porter to waste the jury's time. Still, these witnesses may have viewed the incidents from different vantage points, and thus, be able to provide unique, relevant testimony, or

13

further corroborate Porter's version of events. Moreover, the court's reluctance to allow more than one incarcerated witness testify about a single event is compelled by a concern for burdening the DOC, which becomes substantially reduced when the witness testifies via videoconference. Since Porter has followed the court's requirements with respect to these incarcerated witnesses, therefore, the court will direct the clerk of court to arrange for Holloway, Goodvine and Thompson to testify via videoconference. During the FPTC, the court will also discuss with the parties how this will work logistically.

As to each motion, Porter further requests that the court order that he be allowed to have a videoconference with them, once weekly, for at least 30 minutes, until trial. This amount of time is unnecessary, so these requests are denied. Porter is responsible for making arrangements with prison officials to have phone calls with these other witnesses in accordance with his institution's policies. If thwarted, he should coordinate with defense counsel and, if necessary, this court. Accordingly, these motions are GRANTED in part and DENIED in part.

ORDER

IT IS ORDERED that:

1. Construing plaintiff Brandon Porter's declaration regarding trial witnesses (dkt. #44) as a motion for an extension to request the appearances of witnesses, that request is GRANTED.

2. Plaintiff's motion for a writ of habeas corpus ad testificandum for his own appearance (dkt. #57) is DENIED as duplicative of the court's Trial Preparation

Order.

3. Plaintiff's motions for issuance of subpoena (dkt. ##55, 56) are RESERVED.

4. Plaintiff's motions for a writ of habeas corpus ad testificandum as to Christopher Goodvine (dkt. #58), James Holloway (dkt. #59), and Quenton Thompson (dkt. #60) are a GRANTED in part and DENIED in part as provided above.

5. The clerk of court is directed to arrange for the video testimony of prisoners Christopher Goodvine (located at Green Bay Correctional Institution), James L. Holloway (Oshkosh Correctional Institution), and Quenton Thompson (Columbia Correctional Institution), which the court anticipates will take place the afternoon of October 12, 2021.

6. Defendants' motion in limine (dkt. #46) is GRANTED IN PART and RESERVED in part as set forth above.

7. Defendants' motion to seal (dkt. #51) is GRANTED as provided above.

Entered this 4th day of October, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge